**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

_____X
In re:                                                          :
                                                                    :
Sapphire Development, LLC,                      :         Chapter 11
                                                                    :         Case No. 13-50043
            Debtor.                                        :
_____X
Appearances:

| | | |
|---|---|---|
| Randolph E. White, Esq. | : | For the Debtor |
| David Y. Wolnerman, Esq. | : | |
| White & Wolnerman, PLLC | : | |
| 110 East 59th Street, 25th Floor | : | |
| New York, NY | : | |
| | | |
| James R. Fogarty, Esq. | : | For Robert McKay |
| Fogarty Cohen Selby & Nemiroff, LLC | : | |
| 1700 East Putnam Avenue, Suite 406 | : | |
| Old Greenwich, CT | : | |
| | | |
| David K. Fiveson, Esq. | : | For Hudson City |
| Butler, Fitzgerald, Fiveson & McCarthy | : | Savings Bank |
| 36 West 44th Street, Suite 816 | : | |
| New York, NY | : | |
| | | |
| Gary S. Klein, Esq. | : | For Stuart Longman |
| Carmody Torrance Sandak & Hennessey LLP | : | |
| 707 Summer Street, 3rd Floor | : | |
| Stamford, CT | : | |

**MEMORANDUM OF DECISION**
**AND ORDER ON MOTION TO DISMISS**

## I. Introduction

In conjunction with the District Court's November 5, 2014 ruling ("District Court Ruling")[1] and a corresponding evidentiary hearing on Robert McKay's motion to dismiss this case as a bad-faith filing ("Motion to Dismiss"; see ECF No. 16), the motion is granted for the reasons that follow.

## II. Background

The Court assumes the parties' familiarity with the findings and conclusions of its September 30, 2013 Abstention Order ("Abstention Order"; ECF No. 222) and with the District Court Ruling, which vacated the Abstention Order and remanded this case for further proceeding.[2]  For convenience of the parties, the following limited background is provided to give context to this memorandum of decision.

*A. Pre-Remand*

In 1996, McKay obtained a $3.96 million judgment in his favor from a New York state court ("NYS Judgment").  (*See* Abstention Order at 2.)  The judgment was based on a finding of actual fraud committed by Stuart Longman against McKay, which the state court described as gross, wanton, and willful.  (*See id.* (citing Exh. A of Abstention Trial Exh. B).)

In September 2010, McKay commenced an action against Longman, Sapphire and others in the superior court of the state of Connecticut "to recover his judgment against Longman from Sapphire, by reaching Sapphire's *sole asset*, a 25.237-acre parcel of real property located . . . in Ridgefield, Connecticut ('the Property')" ("State

---

[1] *See Sapphire Dev'l, LLC v. McKay (In re Sapphire Dev'l, LLC)*, 523 B.R. 1 (D. Conn. 2014).

[2] The defined terms used in the District Court Ruling and in the Abstention Order will be used in this memorandum of decision.

Court Action"³). District Court Ruling at 4 (emphasis added); *see also* Abstention Order at 3 (describing the Property as Sapphire's "only asset"). The State Court Action was assigned to the Complex Litigation Docket and scheduled for trial on January 14, 2013. *See id.* The trial was stayed three days before it was to commence when, on January 11, 2013, Sapphire filed this Chapter 11 case. *See id.*; *see also* District Court Ruling at 4; 11 U.S.C. § 362(a)(1).

On January 15, 2013, McKay filed the instant Motion to Dismiss or, in the alternative, to abstain pursuant to 11 U.S.C. § 305(a). On January 23, 2013, McKay filed an amended Motion for Relief from Stay to proceed with the State Court Action. ("MFRS"). *See* Abstention Order at 3. On June 19 and 20, and July 24, 2013, the Court held hearings on McKay's abstention motion ("Abstention Hearing"). On September 30, 2013, the Court granted McKay's Motion to Abstain. *See* Abstention Order at 2. On October 10, 2013, Sapphire filed a notice of appeal. (*See* ECF No. 224.)

B. The Remand

On November 5, 2014, the District Court agreed with this Court's findings, but concluded abstention under § 305(a) was not an appropriate remedy in the context of those findings. The District Court vacated the Abstention Order and remanded the case for further proceedings. In its Ruling, the District Court stated that it

> share[d] the bankruptcy court's assessment of Sapphire's unsavory motives for commencing the bankruptcy, *which could be a basis for dismissing the bankruptcy, lifting the automatic stay, or even imposing sanctions* . . . .

District Court Ruling at 5 (emphasis added). The District Court further

> stresse[d] . . . that the bankruptcy court remains empowered to take further action on McKay's motion to dismiss and motion for relief from the automatic stay. . . [and that] *the bankruptcy court's existing factual findings* [hereafter,

---

³ *See McKay v Longman et al.,* FST-CV10-6007056-S (Conn. Super. filed Oct. 15,2010).

> "Existing Factual Findings"] *as to Sapphire's motives–which are supported by the evidence–are relevant to those motions and would likely support granting either the motion to dismiss or the motion for relief from the automatic stay.*

*Id.* at 12 (emphasis added).

C. *Post-Remand – Motion to Dismiss*

On December 16, 2014, the Court conducted a status conference on McKay's Motion to Dismiss and MFRS. Notwithstanding the District Court's determination that McKay is a creditor in this case, and even if he was not, he has standing as a "party in interest", *see* District Court Ruling at 5-6, Sapphire, Longman, and Hudson City Savings Bank (collectively, "Respondents") nonetheless urged the Court to proceed with Sapphire's adversary proceeding, Adv. Pro. No. 13-5024, which seeks:

> a declaration providing: (A) that McKay does not possess a bona fida claim against Sapphire, and therefore, is not entitled to relief against the Debtor for any purpose, is not entitled to vote in or otherwise recover against the Debtor or its assets in [Sapphire's] Chapter 11 Bankruptcy case and otherwise lacks standing in this Case; and (B) that the Hudson City Mortgage is a valid first priority mortgage on the Property.

(Adv. Pro. No. 13-5024, Complaint at 4, ¶21 (main case, ECF No. 148).)

Sapphire also requested that the Court address its proposed plan of reorganization. McKay countered with a request that the Court grant his Motion to Dismiss on the basis of the evidence presented at the trial on his Motion to Abstain, *i.e.*, the Existing Factual Findings. (*See* Dec. 16, 2014 Audio File, ECF No. 257.)

On January 15, 2015, after considering the parties' positions, the Court entered an order scheduling a hearing on the Motion to Dismiss to give the parties an opportunity to supplement the Existing Factual Findings. (*See* Scheduling Order (ECF No. 259) at 2 (quoting District Court Order, 523 B.R. at 12).) Accordingly, the Court "ORDERED that *the relevant evidence* adduced at the trial on McKay's Motion to Abstain will be included in the record of the trial on McKay's Motion to Dismiss". (*Id.* at

3 (emphasis added).)  Neither party objected.

At the commencement of the trial on April 14, 2015 ("Dismissal Trial"), the parties again acknowledged and did not dispute that, consistent with the District Court Ruling and the Scheduling Order, the record in the Motion to Dismiss would include the Existing Factual Findings.  (*See* Apr. 14, 2015 Audio File, ECF No. 300.)  That record was supplemented by the parties, as discussed *infra*.

### III.  Discussion

The predicate for a Motion to Dismiss is 11 U.S.C. § 1112(b), which provides in relevant part:

> (1)  Except as provided in paragraph (2) . . . the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for *cause* . . .
>
> (2)  The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, *and* the debtor or any other party in interest establishes that—
> (A) there is a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time;
> * * *

11 U.S.C. §1112(b)(1) & (2) (emphasis added).

The party seeking dismissal under § 1112(b)(1) has the burden of proving "cause" by a preponderance of the evidence.  *See In re Julian*, No. 11-30151 (LMW), 2012 WL 506573, at *3, slip op. (Bankr. D. Conn. Feb. 15, 2012) (citations omitted). The party seeking to invoke the § 1112(b)(2) exception has the burden of establishing its entitlement to that exception ("Exception").  *See id.* at *4.

While recognizing that debtor "bad faith" is not included in the illustrative list of "cause" under § 1112(b)(4), the Second Circuit, nonetheless, has held that bad faith may be "cause" warranting the dismissal of a Chapter 11 bankruptcy case.  *See C-TC 9th Ave. P'ship v. Norton Co.* (*In re C-TC 9th Ave. P'ship*), 113 F.3d 1304, 1311; *see*

*also Julian*, 2012 WL 506573 at *311.  The Second Circuit further stated that when assessing whether there is cause warranting dismissal, "The Court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases."  *C-TC 9th Ave. P'ship*, 113 F.3d at 1311 n.5 (quoting House Report No. 95-595, 95th Cong., 1st Sess. at 405-06, U.S. Code Cong. & Admin. News 1978, pp. 5787, 6363-64; further citation omitted).  The *C-TC 9th Ave.* court listed eight factors indicative of a bad faith filing:

> (1) the debtor has only one asset;
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
> (6) the debtor has little or no cash flow;
> (7) the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and
> (8) the debtor has no employees.

*C-TC 9th Ave. P'ship*, 113 F.3d at 1311 (citing *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.*, 139 B.R. 838, 832 (W.D. Ky. 1992)) (the "*C-TC* Factors").  The *C-TC* Factors are non-exhaustive indicators of bad faith which

> *guide* courts in considering the question of whether a bankruptcy case has been filed in good faith, and *assist courts in assessing the totality of the circumstances*. Depending on the situation, one or another factor may have greater weight, and the number of factors on one side or the other of the balance is not, standing alone, determinative of the outcome.

*In re Hartford & York, LLC*, No. 13-45563-ess, 2014 WL 985449, *4, slip op. (Bankr. E.D.N.Y. Mar. 13, 2014) (relying on the *C-TC* Factors in determining whether a filing was in bad faith); *see also In re Loco Realty Corp.*, No. 09-11785 (AJG), 2009 WL

2883050, at *3, slip op. (Bankr. S.D.N.Y. June 25, 2009) ("[The *C-TC* Factors] are not to be applied mechanically and the existence of bad faith does not depend on any particular combination of factors, but rather must be gauged from the facts and circumstances of each case." (Citation omitted)).

*A. Bad Faith Filing as Cause*

At the commencement of the Dismissal Trial, the parties again acknowledged and did not dispute that the record in this Motion to Dismiss would include the Existing Factual Findings.[4] (*See* Apr. 14, 2015 Audio File, ECF No. 300.) Accordingly, the record here includes the following:

> Sapphire is an artificial entity whose only purpose is to hold title to the Property, its only asset, which is not income producing. For the last three years (2011, 2012, and 2013) [Sapphire] has "receive[d] contributions from other related entities". (Debtor's Statement of Financial Affairs ("SOFA"), ECF No. 36, at p.14; Amendment to SOFA, ECF No. 74, at p.1.). It has not filed federal income tax returns for several years. (*See* June 24, 2013 Trial Tr. at 112:21-23 (ECF No. 217).) [Sapphire] has no employees and conducts no business. Without considering McKay's NYS [$3.96 million[5]] Judgment, [Sapphire] has approximately $27,000 in general unsecured claims (*see* Sch. F, ECF No. 36, amended by ECF Nos 74 and 84 (deleting two listed creditors)), and for each of those unsecured creditors, Longman is identified as a co-debtor with the debtor. (S*ee* Schs. F and H, ECF No.

---

[4] The District Court also stated:

> Given the *strong evidence of Sapphire's bad-faith conduct*, already addressed in [the Abstention Hearing] before the bankruptcy court, it may well be within the bankruptcy court's discretion to impose sanctions . . . .

District Court Ruling, 523 B.R. at 13 (emphasis added). However, when the Court asked McKay if he wished to seek sanctions, he stated that he did not. (*See* Dec. 16, 2014 Audio File, ECF No. 257.)

[5] This figure does not include post-judgment interest, which has been accruing since 1996.

> 36, at pp. 9-10, 12). Moreover, [Sapphire] has been making monthly mortgage payments to the first mortgagee, Hudson (*see* Amendment to SOFA, ECF No. 74, at p.1.), and there are no foreclosure actions pending against it (*see* SOFA, Item 5, ECF No. 36 at 16).

Abstention Order at 6-7.

The issue then is whether the Existing Factual Findings, viewed through the lens of the Second Circuit's *C-TC* Factors regarding a bad faith filing, would warrant a finding of cause that would support dismissal. They would.

The following findings are undisputed. Sapphire has only one asset, *i.e.*, the Property, which satisfies *C-TC* Factor 1. *C-TC* Factor 2 is also satisfied as there are few and *de minimis* unsecured claims in comparison to the claims of Sapphire's secured creditors and, potentially, McKay. C-TC Factors 5, 6, and 8 are also satisfied by the evidence offered at the Abstention Hearing. That is, the timing of Sapphire's filing evidences an intent to delay or frustrate McKay's legitimate efforts to enforce his collection of the NYS Judgment (*see* Abstention Order at 2, District Court Ruling, 523 B.R. at 4), Sapphire has little or no cash flow, being supported with advances from other Longman-Controlled Entities (*see* Abstention Order at 7), and Sapphire continues to have no employees and conducts no business (*id.*).

Accordingly, the Court concludes that the Existing Factual Findings support McKay's assertion that this case was filed in bad faith which warrants granting this Motion to Dismiss. The next issue becomes whether the evidence adduced at the Dismissal Trial trial would change that result. It would not.

McKay offered the following evidence. Sapphire is in arrears on post-petition real estate taxes. It continues to be funded with contributions from another Longman-Controlled Entity, *i.e.*, Lurie Investments. Although Sapphire's Chapter 11 case hinges on filing a confirmable plan of reorganization, the core of which is the subdivision of the Property, Sapphire cannot accomplish that goal without zoning approval from the Town

of Ridgefield, which it has neither sought nor obtained.  Sapphire did not persuasively[6] dispute any of that evidence.

Sapphire's opposition to the Motion to Dismiss primarily centered on the value of the Property and its intention to subdivide, develop, and sell a portion of the Property to fund its plan, utilizing a plan-funding agreement with a Longman-Controlled Entity.  The balance of the Property would remain as Longman's residence with Longman paying rent to Sapphire.

Having reviewed the evidence and assessed the credibility of the witnesses, the Court finds that McKay's evidence debunked Sapphire's subdivision scheme, which was the alleged basis for the commencement of this Chapter 11 case and the proposal of its plan of reorganization.  That evidence also satisfied other *C-TC* Factors.  For example, *C-TC* Factor 6 is satisfied since Sapphire has little or no cash flow, and *C-TC* Factor 7 is satisfied since Sapphire is in arrears on post-petition real estate taxes.

Parenthetically, it is reasonable to conclude that the evidence at the Dismissal Trial, independent of the Existing Factual Findings, would warrant the finding of cause

---

[6] Longman's credibility is questionable, at best.  The Court notes this is not inconsistent with the observations of other courts where Longman and/or one or more of his entities were parties. *See, e.g.,McKay v. Longman et al.*, No. 6253-90, Judgment (N.Y. Sup. Ct. (Albany) July 10, 1996) (finding Longman liable to McKay for actual fraud based on, *inter alia*, his gross, wanton and willful conduct in illegally converting mortgage proceeds); *McKay v. Longman et al.*, FST X08 CV 106007056S, slip op. at 9-10, n.3 (Conn. Super. Nov. 30, 2012) (denying defendant bank's motion for summary judgment; finding the discrepancy between Longman's deposition testimony and documentary evidence raised a genuine issue of fact precluding summary judgment); *Kriti Ripley, LLC et al. v. Emerald Invs., LLC, et al.*, 404 S.C. 367, 746 S.E.2d 26 (S.C. 2013) (upholding foreclosure of Emerald's interest in another LLC to satisfy judgment against Emerald and Longman based on their "wrongful acts" of diverting and misappropriating funds); *In re Emerald Invs., LLC*, No 14-13407 (MG), 2015 WL 1540941, slip op. (Bankr. S.D.N.Y. Mar. 31, 2015) (appointing Ch. 11 trustee based on current manager Longman's pre- and post-petition conduct, including bad-faith, "ulterior motives", and non-disclosure of property and potentially related other Longman-controlled entities, including Sapphire and Debtor 60 Shelter Rock Assocs., LLC, another Longman-associated entity, which is also a debtor in this court, Case No. 14-50217); *see also* District Court Ruling, 523 B.R. at 5 (D. Conn. 2014) (sharing bankruptcy court's assessment of Sapphire's "unsavory motives" for commencing case).

under §1112(b)(1) & (4)[7] and granting the Motion to Dismiss.  That aside, the Existing Factual Findings supplemented at the Dismissal Trial by the evidence of a bad faith filing demonstrate that requisite cause.

*B. Conversion or Dismissal*

The analysis turns to the issue of whether it is in the "best interests of the creditors and the estate" to convert this case to Chapter 7 or to dismiss it.  11 U.S.C. § 1112(b)(1).  Where cause exists, a bankruptcy court has "wide discretion" to "decide whether to convert the case to one under Chapter 7 or to dismiss." *In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011)(citing *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010)).  "There is no 'bright-line test to determine [whether] conversion or dismissal is in the best interests of creditors and the estate.'" *Id.* (quoting *In re Westhampton Coachworks, Ltd.*, 2010 WL 5348422, at *6 (Bankr. E.D.N.Y. Dec. 21, 2010)).

1.  <u>Best Interests of Creditors and the Estate</u>

Having found the requisite cause, "the court shall convert [this] case . . . or dismiss [it] . . . , whichever is in the best interests of creditors and the estate . . . " except as provided in subparagraph (2).  11 U.S.C. §1112(b)(1).  It is noted that no party sought conversion.  McKay requested dismissal, and the Respondents opposed that request.

The Court finds it is in the best interests of the creditors and the estate[8] to dismiss this case.  Currently, Sapphire is a debtor-in-possession with all the rights, powers, functions, and duties of a case trustee.  *See* 11 U.S.C. § 1107(a); *see also* §§ 704(a)(2), (5), (7)-(12); 323.  In other words, Sapphire is *now* in control of the estate, which, in this case, is the Property.  Upon dismissal, Sapphire will remain in control of

---

[7] *See, e.g.*, § 1112(b)(4)(I).

[8] Compare 11 U.S.C. § 305(a)(1), which measures the effect of abstention on creditors and the *debtor.*

the Property. Conversion would change that status. Sapphire would then be dispossessed, and a Chapter 7 trustee would be appointed to oversee, manage, and distribute the Property. See 11 U.S.C. §§ 701, 322, 704. Indeed, a Chapter 7 trustee could decide to manage the Property, *e.g.*, pursue a subdivision of the Property or operate it as an income-producing property with new tenants. See 11 U.S.C. § 721.[9]

The interests of creditors are not better served by conversion than by dismissal. The secured creditors are not affected whether the case is converted or dismissed. If converted, the secured creditors' claims are not subject to discharge. If dismissed, the secured creditors' claims remain as they were when the case was filed. That result is the same as to the claims of unsecured creditors.

As to the *de minimus* unsecured creditor pool of non-McKay unsecured creditors (totaling approximately $27,000, *see supra* at 7), Longman has been identified as a co-debtor. See Abstention Order at 7. Therefore, the interests of those claimants are not affected by conversion or dismissal.

McKay, the largest unsecured creditor,[10] specifically requests dismissal so that he may pursue the State Court Action that was stayed by the bad faith filing of this case. Sapphire's opposition to McKay's request is motivated by an attempt to prevent McKay from securing a determination, by pursuing the State Court Action, as to whether he can make a claim against the Property. This Court previously recognized and rejected as repugnant to equity, Sapphire's attempt to block McKay's efforts to resolve that linchpin issue:

---

[9] Section 721 provides:

> The court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate.

11 U.S.C. § 721.

[10] See District Court Ruling, 523 B.R. at 5-6; *see also* 11 U.S.C. §§ 101(10)(defining "creditor"), 101(5) (defining "claim").

> [B]y filing for bankruptcy protection, [Sapphire] is not just seeking to stay the State Court Action, but, by claiming McKay is not a creditor or even a party-in-interest, is also seeking to eradicate McKay's ability to have his day in court, either here or in state court.

See Abstention Order at 7-8; see also District Court Ruling, 523 B.R. at 5, 12-13.

### 2. Exception to Conversion or Dismissal

The remaining issue is whether Sapphire is entitled to an exception to the mandate that the Court dismiss this case. Section 1112(b)(2) provides, in relevant part:

> the court may not . . . dismiss a case under this chapter if the court finds and specifically identifies *unusual circumstances* establishing that converting or dismissing the case is not in the best interests of creditors and the estate, *and* the debtor . . . establishes that—
> (A) there is a reasonable likelihood that a plan will be confirmed within . . . a reasonable period of time . . .

11 U.S.C. § 1112(b)(2)(emphasis added).

To the extent Sapphire offered evidence at the Dismissal Trial to satisfy the §1112(b)(2) Exception, its attempt is fatally flawed. To satisfy its burden of proof, *see supra* at 5, Sapphire offered evidence, primarily through Longman, about its proposed plan of reorganization, focusing on the subdivision of the Property for which no approval was sought or received. More to the point: Sapphire appears to believe that if it ignores McKay's allegations that he should be able to enforce his NYS Judgment against the Property, *see* District Court Ruling, 523 B.R. at 4, those allegations will disappear, and it will be able to utilize the Property to implement its plan. Indeed, Sapphire's proposed Property subdivision assumes (a) the conclusion that it is the rightful owner of the Property, and (b) it will be permitted to subdivide the Property, despite admitting it has not sought any of the requisite zoning approval from the Town of Ridgefield.

Thus, after "a full examination of all the circumstances of the case," *C-TC 9th Ave.*, 113 F.3d at 1312, the Court finds this case was filed in bad faith, which is cause warranting its dismissal, and it is in the best interests of creditors and the estate that this case be dismissed.  See § 1112(b)(1).

### IV.  Conclusion

Accordingly, IT IS ORDERED that McKay's Motion to Dismiss is GRANTED.

IT IS FURTHER ORDERED that, consistent with the District Court Ruling, any party appealing this ruling "shall file a motion with the appeal indicating" that in Judge Shea's view such an appeal is related to the District Court Ruling and "should be assigned to [him]."[11]

Dated this 26th day of June, 2015 at Bridgeport, Connecticut.

BY: *Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge

---

[11]  *See* District Court ruling, 523 B.R. at 13.